# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

UNITED STATES OF AMERICA,　　　　　　:

　　　　　　　　　　Plaintiff,　　　　　　　Case No. 3:08-cr-036

　　　　　　　　　　　　　　　　　　　　District Judge Walter Herbert Rice
　-　vs　-　　　　　　　　　　:　　Magistrate Judge Michael R. Merz

KEVIN R. TINCHER

　　　　　　　　　　Defendant.　　　　　:

# REPORT AND RECOMMENDATIONS ON THE MERITS

This is an action on a Motion to Vacate pursuant to 28 U.S.C. § 2255. As with all § 2255

Motions filed at the Dayton location of court, it was referred to the undersigned on filing, under

the Court's General Order of Assignment and Reference.

Defendant pleads the following grounds for relief in his original Motion:

> **Ground One**: Tincher did not willfully engage in the business of
> dealing firearms.
>
> **Ground Two:** Defense counsel was constitutionally ineffective
> for failing to investigate and understand the elements of the
> charges against Tincher.
>
> **Ground Three:** Assistant United States Attorney vindictively
> sought a Superseding Indictment against Tincher for exerting his
> constitutionally protected rights.
>
> **Ground Four:** This Court violated Fed. R. Crim P. 11 when it
> failed to question Tincher about the elements of Count Six,
> rendering Tincher's plea involuntary.

**Ground Five:** Tincher's sentence was impermissible due to a double-counting enhancement.

**Ground Six:** Tincher was subject to sentencing entrapment.

(Amended Motion, Doc. No. 79, PageID 488, incorporating by reference Doc. No. 74, PageID 388-394.)

In the original Report and Recommendations, the Magistrate Judge found Grounds One, Three, Four, Five, and Six procedurally defaulted and Ground Two to be without merit (Report and Recommendations, Doc. No. 75). Rather than file objections, Tincher obtained leave to file an amended motion and the Magistrate Judge withdrew the Report and ordered an answer and a reply (Doc. No. 78). Those have now been filed (Doc. Nos. 87, 88, 89). Tincher has also filed a Motion for Evidentiary Hearing and Appointment of Counsel (Doc. No. 91).

In permitting the Amended Motion, the Court ordered Tincher to file a pleading "setting forth all his claims not later than August 15 [2002]. He must include a specific statement of which claims he contends Ms. Finucane [appellate counsel] was ineffective for failure to include [in the appeal]." (Order, Doc. No. 78, PageID 486-487.) In the Amended Motion, Tincher incorporates the claims from the original Motion and pleads the following additional ground for relief:

**Ground Seven:** Ineffective Assistance of Appellate Counsel

**Sub-claim One:** Failure to assert that Tincher was not legally culpable because he did not willfully engage "in the business of dealing firearms due to the scienter requirement."

**Sub-claim Two:** Failure to assert that the trial court violated Fed. R. Crm. P. 11 when it "failed to insure that Tincher made his plea knowingly and intelligently regarding Count Six of the Indictment."

> **Sub-claim Three**:  Failure to include the double-counting issue on appeal.
>
> **Sub-claim Four:**   Failure to raise vindictive prosecution and sentencing entrapment.

(Amended Motion, Doc. No. 79, PageID 490-94, relating to Grounds One, Four, Five, and Six in the original Motion.)  The Government's Response (Doc. No. 87) and Tincher's Reply (Doc. No. 88) address the issues in the Amended Motion.  Tincher has also filed a Motion for Evidentiary Hearing and Appointment of Counsel (Doc. No. 91).

## Procedural History

Mr. Tincher was indicted by the grand jury for this District on March 4, 2008 (Doc. No. 1), and charged in six counts:  distribution of oxycodone on December 19, 2007 (Count 1), distribution of cocaine on the same date (Count 2), distribution of oxycodone on January 4, 2008 (Count 3), possessing a firearm (a Wesson .41 magnum CTG) on January 4, 2008, after having been convicted of a felony (Count 4), possessing a firearm (a Wesson .357 magnum revolver) on January 8, 2008, after having been convicted of a felony (Count 5), and willfully engaging in the business of dealing in firearms without a license in January, 2008 (Count 6).

On August 26, 2008, the grand jury returned a superseding indictment (Doc. No. 24), adding charges of attempting to possess in excess of 500 grams of cocaine (Count 7), and using and carrying a firearm during and in relation to a drug trafficking crime (Count 8); the two new charges are alleged to have occurred in February, 2007.

On February 26, 2009, Mr. Tincher entered into a Plea Agreement with the United States under which he agreed to plead guilty to Counts One, Two, Three, Five, and Six of the

Superseding Indictment (Doc. No. 47). On the same date, he in fact pled guilty as agreed after a plea colloquy in open court (Minute Entry, Doc. No. 46). After a presentence investigation, Mr. Tincher was sentenced to 108 months imprisonment on each count of conviction except Count 6, on which he received a 60 month sentence, with all sentences running concurrently (Doc. Nos. 57, 59). He appealed, raising claims that the sentence was procedurally and substantively unreasonable. The Court of Appeals affirmed on June 13, 2011. *United States v. Tincher,* Case No. 09-4189, 425 Fed. Appx. 507, 2011 U.S. App. LEXIS 12014 (copy at Doc. No. 72). The original Motion to Vacate followed on June 28, 2102, within the statute of limitations.

Tincher focuses the arguments in his original and amended § 2255 Motions on Count 6, willfully engaging in the business of dealing in firearms without a license. He raises no claims whatsoever regarding his conviction on three counts of drug trafficking (Counts 1, 2, and 3) and one count of being a convicted felon in possession of a firearm (Count 5). Thus if the Court were to grant the relief sought, only the 60-month sentence on Count Six would be affected; Tincher would remain incarcerated for 108 months on each of the other five counts of conviction.

Tincher seems to believe that the effect of granting his Motion would be resentencing on all counts of conviction, but that is not so. If the conviction on Ground 6 were vacated, Tincher would be subject to trial on that charge and on the dismissed counts of the Superseding Indictment, to wit, Counts 4, 7, and 8. If convicted, he would be subject to sentencing on all three of those counts, even if he were acquitted on the selling firearms count and the Court would be under no duty to run those new sentences concurrent with the present sentence. Finally, because he would have successfully set aside his guilty plea to Count 6, the provisions of the Plea Agreement would permit the United States Attorney to read to the jury all of the admissions

he made in the plea colloquy and in any negotiations leading up to the Plea Agreement (Doc. No. 47, ¶ 5(d)).  In other words, Tincher cannot have the benefit of the Plea Agreement – dismissal of the three other counts – while repudiating part of his obligation under the Plea Agreement – to plead guilty to Count 6.

## Generally Applicable Law

A motion to vacate under § 2255 is not a substitute for direct appeal.  *United States v. Duhart,* 511 F.2d 7 (6th Cir. 1975); *DiPiazza v. United States*, 471 F.2d 719 (6th Cir. 1973). Absent manifest injustice or special circumstances such as a change in the law, § 2255 motions will be dismissed summarily if they raise claims that were or might have been asserted on direct review. Hertz & Liebman, Federal Habeas Corpus Practice and Procedure 5th, §41.7(e)(2005), *citing, Reed v. Farley*, 512 U.S. 339, 358 (1994); *Withrow v. Williams*, 507 U.S. 680, 721 (1993); *Davis v. United States,* 417 U.S. 333, 342 (1974); *Kaufman v. United States*, 394 U.S. 217, 227 n. 8 (1969); Yackle, POSTCONVICTION REMEDIES, §108 (1981)*, citing Mars v. United States,* 615 F.2d 704 (6th Cir. 1980); *Mathews v. United States,*  11 F.3d 583  (6th Cir. 1993).

Tincher attacks a conviction arising out of his negotiated plea of guilty.  A plea of guilty or no contest is valid if it is entered voluntarily and intelligently, as determined by the totality of the circumstances.  *Brady v. United States,* 397 U.S. 742, 748 (1970); *Boykin v. Alabama*, 395 U.S. 238, 242-44 (1969); *King v. Dutton*, 17 F.3d 151 (6th Cir. 1994); *Riggins v. McMackin*, 935 F.2d 790, 795 (6th Cir. 1991); *Berry v. Mintzes,* 726 F.2d 1142, 1146 (6th Cir. 1984).   The determination of whether this plea was intelligently made depends upon the particular facts and circumstances of each case.  *Johnson v. Zerbst,* 304 U.S. 458, 463 (1938); *Garcia v. Johnson*,

991 F.2d 324, 326 (6th Cir. 1993).

> A plea of guilty entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel, must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (e. g. bribes).

*Brady v. United States*, 397 U.S. 742, 755 (1970).

By entering a plea of guilty, the accused is not simply stating that he did the discrete acts described in the indictment; he is admitting guilt of a substantive crime. *United States v. Broce*, 488 U.S. 563, 570 (1989); *McCarthy v. United States*, 394 U.S. 459, 466 (1969). In fact in this case Tincher said he was pleading guilty to the five charges because he felt he was guilty of them (Plea Tr., Doc. No. 69, PageID 313). Where a district court has scrupulously followed the required procedure under Fed. R. Crim. P. 11, "the defendant is bound by his statements in response to that court's inquiry." *Baker v. United States*, 781 F.2d 85, 90 (6th Cir. 1986), *quoting Moore v. Estelle*, 526 F.2d 690 (5th Cir. 1976). A guilty plea bars a defendant from raising in federal habeas corpus such claims as the defendant's right to trial and the right to test the state's case against him. *McMann v. Richardson*, 397 U.S. 759 (1970); *McCarthy*, 394 U.S. at 466. "[T]he representations of the defendant, his lawyer, and the prosecutor at [a plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations made in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977). A voluntary and intelligent plea of guilty made by an accused person who has been advised by competent counsel may not be collaterally attacked. *Mabry v. Johnson*, 467 U.S. 504 (1984).

"[T]he voluntariness and intelligence of a guilty plea can be attacked on collateral review only if first challenged on direct review." *Bousley v. United States,* 523 U.S. 614, 621 (1998), *citing Reed v. Farley*, 512 U.S. 339, 354 (1994).

The procedural default defense in habeas corpus is described by the Supreme Court as follows:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an adequate and independent state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause of the default and actual prejudice as a result of the alleged violation of federal law; or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *see also Simpson v. Jones,* 238 F.3d 399, 406 (6th Cir. 2000). That is, a petitioner may not raise on federal habeas a federal constitutional right he could not raise in state court because of procedural default. *Wainwright v. Sykes*, 433 U.S. 72 (1977); *Engle v. Isaac*, 456 U.S. 107, 110 (1982). Absent cause and prejudice, a federal habeas petitioner who fails to comply with a State's rules of procedure waives his right to federal habeas corpus review. *Boyle v. Million*, 201 F.3d 711, 716 (6th Cir. 2000)(citation omitted); *Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Engle*, 456 U.S. at 110; *Wainwright,* 433 U.S. at 87. *Wainwright* replaced the "deliberate bypass" standard of *Fay v. Noia,* 372 U.S. 391 (1963). *Coleman,* 501 U.S. at 724.

Although developed largely in the context of habeas corpus attacks on state court judgments, the procedural default analysis of *Wainwright* and its progeny is fully applicable to § 2255 motions. *United States v. Frady*, 456 U.S. 152 (1982); *Kaufman v. United States*, 394 U.S. 217 (1969); *Ratliff v. United States*, 999 F.2d 1023 (6th Cir. 1993).

Tincher raises several claims of ineffective assistance of counsel, both at the trial and

appellate levels. The governing standard for ineffective assistance of counsel is found in

*Strickland v. Washington*, 466 U.S. 668 (1984):

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. at 687.

> With respect to the first prong of the *Strickland* test, the Supreme Court has commanded:

> Judicial scrutiny of counsel's performance must be highly deferential. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

466 U.S. at 689.

> As to the second prong, the Supreme Court held:

> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to overcome confidence in the outcome.

466 U.S. at 694. *See also Darden v. Wainwright*, 477 U.S. 168 (1986); *Wong v. Money,* 142 F.3d 313, 319 (6th Cir. 1998); *Blackburn v. Foltz*, 828 F.2d 1177 (6th Cir. 1987). *See generally*

Annotation, 26 ALR Fed 218.

A criminal defendant is entitled to effective assistance of counsel on appeal as well as at trial, counsel who acts as an advocate rather than merely as a friend of the court. *Evitts v. Lucey*, 469 U.S. 387 (1985); *Penson v. Ohio*, 488 U.S. 75 (1988); *Mahdi v. Bagley*, 522 F.3d 631, 636 (6th Cir. 2008). The *Strickland* test applies to appellate counsel. *Smith v. Robbins*, 528 U.S. 259, 285 (2000); *Burger v. Kemp,* 483 U.S. 776 (1987). To evaluate a claim of ineffective assistance of appellate counsel, then, the court must assess the strength of the claim that counsel failed to raise. *Henness v. Bagley*, 644 F.3d 308 (6th Cir. 2011), citing *Wilson v. Parker*, 515 F.3d 682, 707 (6th Cir. 2008). Counsel's failure to raise an issue on appeal amounts to ineffective assistance only if a reasonable probability exists that inclusion of the issue would have changed the result of the appeal. *Id. citing Wilson.*

If a reasonable probability exists that the defendant would have prevailed had the claim been raised on appeal, the court still must consider whether the claim's merit was so compelling that the failure to raise it amounted to ineffective assistance of appellate counsel. *Id. citing Wilson.* The attorney need not advance every argument, regardless of merit, urged by the appellant. *Jones v. Barnes*, 463 U.S. 745, 751-752 (1983)("Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." 463 U.S. 751-52). Effective appellate advocacy is rarely characterized by presenting every non-frivolous argument which can be made. *Joshua v. DeWitt*, 341 F.3d 430, 441 (6th Cir. 2003). *Williams v. Bagley,* 380 F.3d 932, 971 (6th Cir. 2004), *cert. denied,* 544 U.S. 1003 (2005); see *Smith v. Murray*, 477 U.S. 527 (1986). "To prevail on a claim of ineffective assistance of appellate counsel, a petitioner must show that appellate counsel ignored issues [which] are clearly stronger than those

presented." *Webb v. Mitchell,* 586 F.3d 383, 399 (6th Cir, 2009); *Smith v. Robbins*, 528 U.S. 259, 288 (2000), *quoting Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986).

### Procedural Default

In the original Motion, Mr. Tincher admits that none of the first six Grounds for Relief was raised on appeal to the Sixth Circuit. With respect to Ground Two, the ineffective assistance of trial counsel claim, his stated reason is that a § 2255 motion is the proper place to raise such a claim. He is correct, and Ground Two will be separately analyzed below.

As to the other five Grounds for Relief in the original Motion, Mr. Tincher's reason for not including them in the appeal is, he says, that the claim was not discovered until after direct appeal briefing was filed. (See, e.g., PageID 388.)

Mr. Tincher's Grounds One, Three, Four, Five, and Six could all have been raised on direct appeal. Each of them depends on facts which were of record at the time of appeal or could have been made of record prior to judgment in this Court. For example, Mr. Tincher's claim that he is actually innocent of willfully engaging in the firearms business without a license was available on appeal; the precedent on which he relies had already been decided before judgment was entered. The facts on which he relies for his vindictive prosecution claim were already known to him when the superseding indictment was handed down in August, 2008. Any omissions in the plea colloquy were of record before the appeal was taken. Finally, any error in applying the Sentencing Guidelines occurred before appeal and the facts on which he relies to show sentencing entrapment were known to him before he was sentenced.

Because all five of these claims were available on direct appeal but not raised, they are barred by procedural default, unless Tincher can show excusing cause and prejudice. *United States v. Frady*, 456 U.S. 152 (1982). To attempt to show cause and prejudice, Tincher pleads in Ground Seven that his appellate counsel was ineffective in failing to raise Grounds One, Four, Five and Six. Ground Seven is considered below. Tincher has not claimed ineffective assistance of appellate counsel as to Ground Three, vindictive prosecution, and it should therefore be dismissed with prejudice as barred by procedural default.

### Ground Two:  Ineffective Assistance of Trial Counsel

As Mr. Tincher notes, a claim of ineffective assistance of trial counsel is properly raised for the first time in a motion to vacate under § 2255. *Griffin v. United States*, 330 F.3d 733, 737 (6th Cir. 2006); *Massaro v. United States*, 538 U.S. 500 (2003); *United States v. Neuhausser*, 241 F.3d 460 (6th Cir. 2001); *United States v. Fortson,* 194 F.3d 730, 736 (6th Cir. 1999). Tincher asserts generally that his counsel did not understand the elements of the charges against him. In the body of his supporting Memorandum, however, he makes clear that it is the willfulness element of Count 6 of the Indictment which he claims his attorney did not understand and advise him of (Motion, Doc. No. 74-1, PageID 415-418). He claims that, had he known that it was not unlawful to sell the sole firearm he had in his personal collection, he would not have pleaded guilty to that Count. *Id.* at PageID 418.

The first difficulty with Mr. Tincher's argument is that he presents no evidence that his counsel was unaware of the elements of the firearms dealing charge. The willfulness requirement is charged in the Indictment and Superseding Indictment (See PageID 38, 97). Mr.

Tincher's actual innocence theory on Ground One hinges in substantial part on his claim that the first weapon he sold (on January 4, 2008) was the only weapon he owned and he sold it because he knew that, as a convicted felon, he was not permitted to own a firearm. But that claim flies in the face of the admissions he made in the Statement of Facts that he sold two more firearms to Agent Godsave on January 8, 2008 (Plea Agreement, Doc. No. 47, PageID 172). His claim in his original Motion is that these were in fact guns owned by a confidential informant which Tincher was storing for the CI and which Tincher brought out of hiding so that the CI could sell them to Agent Godsave (Doc. N0. 74, PageID 414). However, in the Plea Agreement Statement of Facts, he admitted that he made the sale. Thus Tincher's admission at the time of the plea, an admission he made under oath, undercuts his present claim that he did not make the sale. (The reports which Tincher himself attaches to the § 2255 Motion give considerably more detail which support the conclusion it was Tincher who made the sale, e.g. haggling over price.)

Because a conversation between Tincher and his counsel about willfulness could only have impacted Tincher's theory of innocence as to the first sale and Tincher admitted making another sale, he cannot establish prejudice from his attorney's lack of advice on the willfulness element, even assuming it happened. Ground Two is therefore without merit and should be dismissed with prejudice.

### Ground Seven: Ineffective Assistance of Appellate Counsel

As to Grounds One, Four, Five, and Six, Tincher attempts to show ineffective assistance of appellate counsel for failure to raise these four claims on direct appeal, in order to show cause and prejudice to excuse his procedural default.

The Government analyzes Ground One as raising a claim of actual innocence or insufficiency of the evidence to prove guilt on Count Six, willful sale of a firearm by a person who is not licensed to do so (Response, Doc. No. 87, PageID 550). Tincher replies that his real claim in Ground One is that his plea was not knowing and voluntary because "[f]or Tincher to have known he was guilty of engaging in the business of trafficking firearms without a license requires Tincher to know what Congress meant when they made engaging in the business of trafficking firearms without a license [a crime]." (Reply, Doc. No. 88, PageID 562-63.) Tincher admits that he understands "every day conversation. However, he does not come close to understanding the complexities of the law." *Id.* at 563. He then reiterates the claim made in his original Motion that his plea is involuntary because the acts in which he engaged are not unlawful but are in fact protected from prosecution by the Firearm Owners Protection Act. As proof that his responses at the plea colloquy are not conclusive, he relies on *United States v. Bryan*, 524 U.S. 184 (1998).

In *Bryan*, the Supreme Court considered a direct appeal of a person convicted of selling firearms without a license. At trial, no evidence was presented that Bryan knew of the federal licensing requirement. The Court held that proof was not necessary. It was sufficient to prove that the defendant acted willfully to show that he acted with knowledge that his conduct was unlawful and this did not include knowledge of the meaning of the law. "As a general matter, when used in the criminal context, a "willful" act is one undertaken with a "bad purpose," *Id.* at 191. The Court further held Congress did not intend with the Firearm Owners Protection Act to adopt an exception to the rule that ignorance of the law is not an excuse for criminal behavior. *Id.* at 196. The Court explicitly found that Congressional intent in adopting FOPA "is too ambiguous to offer petitioner must assistance." *Id.*

Thus Tincher's claim that he had to understand what Congress meant in enacting the FOPA is belied by *United States v. Bryan*, the very precedent on which he relies. The Supreme Court of the United States says it cannot tell for sure what Congress' intent was, but it upheld Bryan's conviction anyway, meaning experienced lawyers might not understand. Thus if Tincher's First Ground for Relief is construed as he says he wishes it to be construed in his Reply, he is not entitled to relief because it is not required that a defendant understand the applicable law in all its "complexities" before his plea is voluntary.

On the other hand, Tincher's First Ground for Relief could be construed as an actual innocence claim, which is the way he argued it in the original Motion:

> In Tincher's case, not only did he not know what he was doing by selling his firearm was unlawful, but by definition of Congress' statute and the Supreme Court's recognition in Bryan when analyzing FOPA, the conduct Tincher participated in was not a violation of the law. As Bryn explained, . . . the definition of the term 'engaged in the business' . . . shall not include a person who makes occasional sales, exchanges, or purchases of firearms for the enhancement of a personal collection or for a hobby, or who sells all or part of his personal collection of firearms . . .

(Doc. No. 74, PageID 412.) Tincher then claims he owned a single firearm, a .41 caliber Magnum CTC, which he had owned prior to becoming a felon[1], did not want to have it discovered by his probation officer, and sold it to Agent Godsave as a safe way to get rid of the gun. *Id.*

As to the other two firearms which form part of the factual predicate of conviction, Tincher asserts they belong to CI-67 [Confidential Informant] who brought them to Tincher's home on January 7, 2008, and tried to use them as payment for a drug debt. *Id.* at PageID 413.

---

[1] Tincher does not say when he acquired this gun, but his first felony conviction was in 1996 (See Plea Tr. at PageID 280), so he had been in continuous violation of the felon in possession statute for over ten years until he suddenly, two days before his next sale, understood the risk his probation or parole officer would find the gun.

Tincher told CI-67 he would not accept them as payment, but agreed to store them until the next day. *Id.* at PageID 414. The next day Godsave and CI-67 came to Tincher's house. *Id.* He retrieved the guns, handed them to CI-67, and left the room. *Id.* When he returned, Godsave offered Tincher $350 for the guns, but Tincher said he "had $400 in them." *Id.* "The statement was made by Tincher to ensure that CI-67 made enough money to repay him after the sale, not because the firearms were his." *Id.* Tincher avers that he "believed wholeheartedly that his actions of selling his firearm were legal when Tincher repeatedly told defense counsel such at their few meetings." *Id.* at 417.

On February 26, 2009, Tincher appeared in open court for the plea colloquy required by Fed. R. Crim. P. 11; the colloquy is transcribed at Doc. No. 69. Prior to the colloquy, Tincher was sworn to answer Judge Rice's questions truthfully. *Id.* at PageID 277. As part of that proceeding, he swore to the truth of the facts set forth in the Statement of Facts attached to the Plea Agreement. As part of the statement, he swore that he sold the .41 caliber pistol to Godsave on January 4, 2008, and the other two firearms to Godsave on January 8, 2008. (Doc. No. 47, PageID 172; Doc. No. 69, PageID 280.) He swore he understood the charges and that they had been explained to him (Doc. No. 69, PageID 280-281 and PageID 288). He also agreed to that portion of the Plea Agreement which required forfeiture of his interest in all three of the firearms *Id.* at PageID 307-08. Toward the end of the colloquy, Tincher said he understood all that had been gone over and that he had no questions. *Id.* at PageID 314. Based on Tincher's statements, Judge Rice found that he understood the nature of the charges to which he was pleading guilty, including Count 6 of the Superseding Indictment. *Id.* at PageID 316. At the very next page of the transcript, Tincher again denied he had any questions. *Id.* at PageID 317.

At no time between the guilty plea on February 26, 2009, and the date he filed his

original Motion more than three years later on June 28, 2012, did Tincher ever attempt to withdraw his guilty plea or assert in this Court or the Court of Appeals any of the facts he now avers were true and made his plea involuntary.

Tincher does not say when he learned of the Firearm Owners Protection Act or of *United States v. Bryan, supra*. The Court will assume for purposes of this proceeding that Tincher did not know of those two pieces of the law at the time he pled guilty.[2] That lack of knowledge is immaterial to this proceeding, because neither of those pieces of the law provides Tincher with a defense. His admitted conduct of being involved in the transfer of the three firearms to Agent Godsave in connection with drug transactions clearly satisfies the willfulness requirement of the statute. And even if the other two guns belonged to CI-67, the facts asserted now by Tincher are sufficient to support a conviction that he made the sale: he haggled over the price with Godsave because he expected to be paid a debt out of the proceeds, he was treated by Godsave as having authority to set the final price, and he admits that the weapons were at least stored at his residence before the sale.

*United States v. Bryan*, 524 U.S. 184 (1998), is not to the contrary. There the Supreme Court held that the willfulness element created no special scienter burden on the United States, but sufficiently proved by showing the defendant knew he was acting illegally, proved in *Bryan* by showing the sales were made on the street and with agreement to remove the serial numbers. Selling guns in connection with drug transactions, as Tincher did here, is no more innocent than the conduct in *Bryan*. The Court also held that the Government did not have to prove that a defendant knew of the licensing requirement.

A claim of actual innocence alone is insufficient to warrant habeas relief. *Herrera v.*

---

[2] Even though he says he believed wholeheartedly he had not violated the firearms laws and told his attorney that a number of times (Original Motion, Doc. No. 74, PageID 417).

*Collins*, 506 U.S. 390 (1993); *Cress v. Palmer*, 484 F.3d 844, 854 (6th Cir. 2007), *citing Zuern v. Tate*, 336 F.3d 478, 482, n.1 (6th Cir. 2003), and *Staley v. Jones*, 239 F.3d 769, 780, n.12 (6th Cir. 2001). The Supreme Court has twice suggested that a "truly persuasive demonstration" of actual innocence would render a petitioner's execution unconstitutional. *Herrera; House v. Bell*, 547 U.S. 518 (2006). To show actual innocence as a "gateway" or to excuse procedural default, a defendant must present persuasive new evidence that he is actually innocent, e.g. new physical or scientific evidence. *Schlup v. Delo*, 513 U.S. 298 (1995).

Because his claim of actual innocence on Count 6 is without merit, it was not ineffective assistance of appellate counsel for his appellate counsel to fail to make that claim. Thus he has not shown excusing cause and prejudice with respect to Ground One.

In sub-claim two of Ground Seven, Tincher asserts his appellate counsel was ineffective in failing to raise the claim he makes in Ground Four, to wit, that Judge Rice did not comply with Fed. R. Crim. P. 11 by failing to question Tincher about the elements of Count Six. As noted above, however, Judge Rice went over all the charges and their elements and asked Tincher several times if he understood them and if he had any questions. Given what the record shows about his answer during the plea colloquy, it would have been fruitless on appeal to claim he did not understand and was not questioned. Since that claim would not have been successful, it was not ineffective assistance of appellate counsel to fail to raise it.

In sub-claim three of Ground Seven, Tincher asserts his appellate counsel was ineffective for failing to raise the "double counting issue" on appeal. Although he made a successful objection at sentencing to a four-level enhancement under U.S.S.G. § 2K2.1(b)(6), he did not make the objections he raises now to application of U.S.S.G. § 2K2.1(b)(5). Since no objection was made at the trial court level, the objection was waived and it would have been fruitless for

appellate counsel to attempt to raise it for the first time on appeal. In any event, as shown by the Government's Response, there was no double-counting (Doc. No. 87, PageID 557). Since that claim would not have been successful, it was not ineffective assistance of appellate counsel to fail to raise it.

In sub-claim four of Ground Seven, Tincher asserts his appellate counsel was ineffective for failing to raise a claim of sentencing enhancement misconduct by the Government. As shown in the Government's Response, the Sixth Circuit has repeatedly and clearly rejected this claim (Doc. No. 87, PageID 558). It cannot be ineffective assistance of appellate counsel to fail to argue a claim that the court has repeatedly rejected.

Since Tincher has failed to show it was ineffective assistance of appellate counsel to fail to raise any of the remaining Grounds for Relief as claims on direct appeal, he has not excused his procedural default and Grounds One, Four, Five, and Six remain procedurally defaulted.

**Evidentiary Hearing**

Tincher seeks an evidentiary hearing to resolve a number of what he refers to as factual disputes. Three are included in his Reply:

1.      Whether he entered his guilty plea knowingly, i.e. with an understanding of the law as it applied to the facts of his case (Reply, Doc. No. 88, PageID 562). Tincher claims that what he did not understand was that "he was protected from the law, not in violation of the law, with respect to Count Six of the Superseding Indictment." *Id.* at PageID 563.

2.      What is the meaning of the conversation between Tincher and ATF SA Godsave about "piecing out pistols." *Id.* at PageID 566.

3.     Tincher wants to "verify and expand the record regarding the video surveillance of the January 8, 2007, sale of the two firearms to SA Godsave by CI-67. . . . This video recording will show that Tincher was a third-party in this sale, and thus, should not be accountable for these firearms. " *Id.* at PageID 570.

Other factual issues are included in Tincher's Request for Evidentiary Hearing:

1.     The request to view the recording of the January 8, 2007, sale is repeated  (Request, Doc. No. 91, PageID 586).

2.     Tincher wants to "develop the record as to his understanding of the [sic] 18 U.S.C. § 922(a)(1)(A) and § 924(a)(1)(D)." *Id.*

3.     Tincher wants to "further develop the record regarding the Rule 11 hearing and the requirements of law regarding FOPA and the Court's role in ensuring Tincher understood the elements of the formal charges."  *Id.*

4.     Tincher wants to develop the record on his ineffective assistance of appellate counsel claims.  He claims he asked appellate counsel "on multiple occasions" to include arguments concerning selling firearms without a license, but she claimed she had already filed the brief without consulting him.  *Id.*

5.     Tincher wants to develop the record regarding his ineffective assistance of trial counsel claim, particularly the defense he now asserts to the firearms charge.  *Id.* at PageID 567.

6.     Tincher asks to be interviewed himself as to his claim that he did not understand the law, "but was only following horrible advice from an attorney this Court appointed to represent him." *Id.*

These requests, viewed in the context of the other positions taken by Tincher on his § 2255 Motion, make it appear that what he really wants to do is withdraw his guilty plea on Count

Six and try that Count through an evidentiary hearing on the § 2255 Motion.

An evidentiary hearing is to be held only if there is a factual dispute and the record does not conclusively show that the petitioner is not entitled to relief. Review is for abuse of discretion. *Ross v. United States*, 339 F.3d 483 (6th Cir. 2003). The burden of establishing entitlement to an evidentiary hearing is relatively light. *Smith v. United States*, 348 F.3d 545, 551 (6th Cir. 2003). However, no evidentiary hearing is necessary if the petitioner's allegations "cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Arredondo v. United States,* 178 F.3d 778, 782 (6th Cir. 1999).

> In reviewing a § 2255 motion in which a factual dispute arises, "the habeas court must hold an evidentiary hearing to determine the truth of the petitioner's claims." *Turner v. United States*, 183 F.3d 474, 477 (6th Cir. 1999). "[T]he burden on the petitioner in a habeas case for establishing an entitlement to an evidentiary hearing is relatively light." *Id.* More is required, however, than mere assertions of innocence. *See id.* ("[I]t would be nonsensical to conclude that the petitioner could meet that burden simply by proclaiming his innocence."). Nevertheless, "[a]n evidentiary hearing is required unless the record conclusively shows that the petitioner is entitled to no relief." *Arredondo* [*v. United States,* 178 F.3d 778, 782 (6th Cir. 1999)] (internal quotations omitted). Stated another way, "no hearing is required if the petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Id.* (internal quotations omitted).

*Valentine v. United States*, 488 F.3d 325 (6th Cir. 2007).

A key question in determining whether to hold an evidentiary hearing is whether the factual disputes are about "material" issues. Many of the issues which Tincher says he wants to develop relate to his understanding of the Firearm Owners Protection Act. But the understanding which Tincher now says he has – that his conduct was legally protected by FOPA – is wrong, as demonstrated above. Thus what he believes about the meaning of that law is immaterial because

his conviction does not depend on his subjective beliefs.

The time to have insisted on trying the facts which Tincher now says are in issue would have been in lieu of pleading guilty or on a timely motion to withdraw the plea. The factual issues which Tincher now wishes to try are either immaterial to § 2255 proceedings (because they allege discussions with counsel about Tincher's *Bryan* defense which would have been unavailing) or are barred by Tincher's admissions in connection with his guilty plea.

The Motion for Evidentiary Hearing is DENIED.

## Conclusion

Tincher's Amended Motion should be dismissed with prejudice. Because reasonable jurists would not disagree with this conclusion, he should be denied a certificate of appealability and the Court should certify that any appeal would not be taken in objective good faith.

July 8, 2013,

s/ *Michael R. Merz*
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral

hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).